■ DAVID L. KIPPER, Plaintiff, v ROBIN C. KIPPER, Appellant. GOLENBOCK AND BARRELL, Respondents. DAVID L. KIPPER, Plaintiff, v MARK FELDMAN et al., Appellants. GOLENBOCK AND BARRELL, Respondents. NORMAN KIPPER, Plaintiff, v DAVID KIPPER et al., Defendants, and ROBIN C. KIPPER, Appellant. GOLENBOCK AND BARRELL, Respondents.—Order, Supreme Court, New York County (Walter M. Shackman, J.), entered January 28, 1988, which, *inter alia*, confirmed a report of Special Referee Diamond filed May 5, 1987, and judgment of said court entered thereon on or about February 4, 1988, which directed judgment against Robin Cantor Kipper and Saul Cantor in the principal amount of $131,619.70, and directed judgment against Mabel Cantor as trustee of the Mabel Cantor Trust in the principal amount of $762.13, unanimously modified, on the law and the facts, so as to reduce the judgment against Robin and Saul Cantor to the principal amount of $100,000, and as modified, affirmed, without costs.

On April 25, 1980, Robin Kipper retained the petitioner law firm Golenbock and Barrell to represent her with regard to various actions and proceedings arising from the degeneration of her marriage to her then-husband David Lawrence Kipper, an attorney. In November 1982, the petitioner law firm was discharged. For services rendered over this period of time the petitioner law firm charged slightly less than $400,000. A total of $295,900.50 was paid, and a trial was conducted before a Special Referee concerning additional fees sought in the amount of $132,381.83. The Special Referee, whose findings were confirmed by the trial court, found in favor of the petitioner law firm for the full amount sought.

It is contended that the proceedings in which the petitioner law firm appeared were not particularly complex, and that petitioner's expensive efforts were not particularly fruitful. At the time the retainer agreement was signed, a proceeding by Robin Kipper for an order of protection was pending in Family Court. After a lengthy trial lasting five days, for which

a fee of $17,000 was charged, the order of protection was denied. Also pending was an action by Norman Kipper, Robin's father-in-law, against Robin to recover on a $75,000 promissory note given in connection with a loan to purchase the marital residence, a cooperative apartment on Park Avenue. At least $60,000 was expended on discovery, depositions, motions, and conferences with respect to this action, although ultimately the note was paid. Similarly, depositions, motions, and extensive discovery were conducted with respect to an action pending by David Kipper to impose a constructive trust on real property owned by a Cantor family trust in Westchester, although ultimately the action was dismissed because David Kipper had never contributed to the purchase of the property. At least $70,000 was billed by petitioners in defending this action. Further time was spent on what are characterized as equally unavailing tactics and overblown discovery proceedings, whereas a motion for pendente lite support was delayed for over a year and ultimately denied, and a motion to modify a summer visitation schedule was not brought until July 1981, when it also was denied. When the petitioner law firm was discharged, an uncontested judgment of divorce had been obtained, but the economic issues were still awaiting trial.

Were it not for the fact that a substantial amount of the total fee was paid without objection, or that sharp factual disputes which are reflected in the lengthy proceedings before the Special Referee exist, we would be unable to countenance the fees charged by petitioner. Indeed, the Special Referee found that, "[t]he amounts involved in the outgoing attorney's claim is [sic] so large that they create an aura of excessiveness." However, the Special Referee found that Saul Cantor, Robin's father, was a sophisticated businessman versed in legal matters, that he in fact paid for petitioner's services, that he was fully involved in determining the course of this litigation, and that he was determined to fully litigate every issue, as well as to avoid any action which might place money in the hands of his daughter's ex-husband. There was sufficient testimony to this effect in the record. We cannot therefore conclude on this record that the Referee's findings were unsubstantiated. We recognize and adhere to the principle that it is the Referee's function to resolve matters of credibility, to which, if supported by the record, the court will generally defer. (Clean Rental Servs. v Karten, 146 AD2d 462; Kardanis v Velis, 90 AD2d 727.)

Accepting as valid the Referee's general conclusions, how-

ever, we nevertheless find no support in the record for the imposition of certain charges which were clearly either unnecessary or otherwise improper, for activities such as filing, Xeroxing, organizing files, creating digest of depositions, attendance of two attorneys at a single deposition, and the like. We find the award excessive in the amount indicated and modify accordingly. Concur—Kupferman, J. P., Sullivan, Carro and Asch, JJ.